**Prepared By:**
**WELLS FARGO BANK, N.A**
**SELINAH GITAKA**
**1 HOME CAMPUS**
**DES MOINES, IA  50328**
**800-416-1472**

**After Recording Please Return To:**
**SERVICELINK**
**LOAN MODIFICATION SOLUTIONS**
**3220 EL CAMINO REAL**
**IRVINE, CA  92602**
**800-756-3524**

Property Address:
**325 PEACHTREE DR**
**JENKINTOWN, PA  19046**

**Tax/Parcel #: 30-00-52212-00-3**

——————————————— *[Space Above This Line For Recording Data]* ———————————————

**Original Principal Amount**
**$199,500.00**                                         **Investor Loan No: 4013657293**
**Unpaid Principal Amount**
**$186,214.88**                                         **Loan No: (scan barcode)**
**New Principal Amount $204,843.45**
**Total Cap Amount $18,628.57**

# Loan Modification Agreement

Executed on this day: **May 13, 2021**
Borrower ("I"):[1] **ANDREW R. GROSS AND TINA MARIE GROSS**
Borrower Mailing Address: **325 PEACHTREE DR, JENKINTOWN, PA  19046**
Lender or Servicer ("Lender"): **WELLS FARGO BANK, N.A.**
Lender or Servicer Address: **1 HOME CAMPUS, DES MOINES, IA 50328**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") **August 24, 2017** and Note ("Note"): **August 24, 2017**

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I" or "my") shall include the plural (such as "we" or "our") and vice versa where appropriate.

---



Property Address ("Property"): **325 PEACHTREE DR, JENKINTOWN, PA 19046**

Legal Description: **SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Mortgage for **$199,500.00** and interest, dated **August 24, 2017** and recorded on **August 31, 2017** in **Instrument No.CRFN 2017065591 BOOK 14401  PAGE 00021** of the Official Records of **MONTGOMERY** County, **PENNSYLVANIA**

This Loan Modification Agreement ("Agreement") is made on **May 13, 2021** by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents. Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

## 1. Borrower Representations.

I certify, represent to Lender and agree:



A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and/or (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future, I did not intentionally or purposefully default of the Mortgage Loan in order to obtain a loan modification;

B. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the modification, are true and correct;

C. If Lender requires me to obtain credit counseling in connection with the modification, I will do so;

D. I have made or will make all payments required within this modification process;

E. In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

F. Borrower filed for relief under Chapter **13** of the United States Bankruptcy Code on **November 19, 2020**.

G. This Agreement is only valid once consent of the United States Bankruptcy Court or other applicable approval to modify this mortgage is received.

H. Prior to filing for relief under the United States Bankruptcy Code, Borrower agreed to repay the above referenced loan pursuant to the Loan Documents between Lender and Borrower. Such Agreement granted Lender a valid security interest and an enforceable lien on the property securing the loan.

I. Notwithstanding anything to the contrary contained in this Agreement, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Loan Documents under appropriate circumstances. Borrower and Lender agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Loan Documents as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.



J. Borrower desires to retain the Property securing the Note, and acknowledges that Lender's security interest and lien are still valid and enforceable.

K. Borrower acknowledges and understands that he/she is not obligated to enter into this Agreement, and that he/she is entering into this Agreement at Borrower's request, voluntarily and with no coercion or pressure from Lender, for the sole purpose of retaining the Property.

## 2. The Modification.

A. The modified principal balance of the Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (which may include unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of this modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the modified loan. The new principal balance of the Note will be **$204,843.45** (the "New Principal Balance"). Borrower understands that by agreeing to add the Unpaid Amounts to the principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

B. Interest at the rate of **4.000%** will begin to accrue on the New Principal Balance as of **May 1, 2021** and the first new monthly payment on the New Principal Balance will be due on **June 1, 2021**. Interest due on each monthly payment will be calculated by multiplying the New Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12). The payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 480 | 4.000% | 05/01/2021 | $856.12 | $860.62 | $1,716.74 | 06/01/2021 |

**\* This includes an escrow shortage amount to be paid over the first 60 month term. After the modification is complete, escrow payments adjust at least annually in accordance with applicable law; therefore, the total monthly payment may change accordingly.**




The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

## 3. Loan Modification Terms.

This Agreement hereby modifies the following terms of the Loan Documents as described herein above as follows:

A. The current contractual due date has been changed from **March 1, 2020** to **June 1, 2021**. The first modified contractual due date is **June 1, 2021**.

B. The maturity date is **May 1, 2061**.

C. The amount of Recoverable Expenses* to be capitalized will be U.S. **$0.00**.

   *Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

D. Lender will forgive outstanding Other Fees U.S. **$0.00**. Other Fees may include, but are not limited to: Prior Deferred Interest, appraisal fees.

E. Lender will forgive outstanding NSF Fees U.S. **$0.00**.

F. Lender agrees to waive all unpaid Late Charges in the amount of U.S. **$47.62**.

G. The amount of interest to be included (capitalized) will be U.S. **$9,192.96**.

H. The amount of the Escrow Advance to be capitalized will be U.S. **$9,435.61**.

## 4. Additional Agreements.

I agree to the following:

A. If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

B. If a biweekly loan, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve

(12) segments.   Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due.  As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

**C. Funds for Escrow Items.**  I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents;  (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items."  I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E.  I shall pay Lender the Funds for Escrow Items unless Lender waives the obligation to pay the Funds for any or all Escrow Items. Lender may waive the obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  The obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and Agreement contained in the Loan Documents, as the phrase "covenant and Agreement" is used in the Loan Documents.  If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.



The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an Agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

D. That the mortgage insurance premiums on the loan, if applicable, may increase as a result of the modification of the loan which may result in a higher total monthly payment. Furthermore, the cancellation date, termination date, or final termination of the private mortgage insurance may be recalculated to reflect the modified terms and conditions of the loan.

E. If the Borrowers balance has been reduced as a result of this new Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with this loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. *Exception:* In the state of California, Life, A&H, and IUI insurance <u>must</u> be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.



F. If this loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

G. If the Borrower's home owners insurance should lapse, Wells Fargo Home Mortgage reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

H. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Loan Documents. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

I. If Borrower has a pay option adjustable rate mortgage Loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.

J. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

K. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

L. CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants Wells Fargo Home Mortgage, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as



modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 180 days from the closing date of the undersigned's Modification, or the date any and all documents that the lender requires to be recorded have been successfully recorded at the appropriate office, whichever is later. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

M. If the Borrower's Loan is currently in foreclosure, the Lender will attempt to suspend or cancel the foreclosure action upon receipt of the first payment according to this Agreement. Lender agrees to suspend further collection efforts as long as Borrowers continue making the required payments under this Agreement.

N. All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

O. This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into with Lender.

P. In cases where the Loan has been registered with Mortgagee who has only legal title to the interests granted by the Borrower in the Loan Documents, Mortgagee has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling the Loan.

Q. If the Loan Documents govern a home equity loan or line of credit, then Borrower agrees that as of the Modification Effective Date, the right to borrow new funds under the home equity loan or line of credit is terminated. This means that Borrower cannot obtain additional advances and must make payments according to this Agreement. Lender may have previously terminated or suspended the right to obtain additional advances under the home equity loan or line of credit, and if so, Borrower confirms and acknowledges that no additional advances may be obtained.

R. Unless this Agreement is executed without alteration and is signed and returned along with the following documents with the payment, if required, within 15 days from the date of this letter in the enclosed, prepaid overnight envelope, it will be

of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Loan Documents. Upon receipt of a properly executed Agreement, this Agreement will become effective on **May 1, 2021**.

S. I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/ or subordination Agreement(s).

T. Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about my modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

U. Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging. ☐

V. Borrower must deliver to Wells Fargo Home Mortgage a properly signed modification Agreement by **May 29, 2021**. If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, Wells Fargo Home Mortgage may deny or cancel the modification. If the Borrower returns properly signed modification Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. Wells Fargo Home Mortgage may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.



All Borrowers are required to sign and date this Agreement in blue or black ink only as the Borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.

By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.

_____ (Seal)   ___5/21/21___
Borrower: ANDREW R. GROSS           Date

_____ (Seal)   ___5/21/21___
Borrower:  TINA   MARIE   GROSS     Date
*SIGNING       SOLELY       TO
ACKNOWLEDGE THIS AGREEMENT,
BUT NOT TO INCUR ANY PERSONAL
LIABILITY FOR THE DEBT

*[Space Below This Line For Acknowledgment in Accordance with Laws of Jurisdiction]*



# ACKNOWLEDGMENT

State of _Pa_

County of _Montgomery_

    On this ___21 st___ day of ___May___, ___21___, before me, the undersigned officer, personally appeared **ANDREW R. GROSS AND TINA MARIE GROSS**, known to me (or satisfactorily proven), to be the person whose name is subscribed to the within instrument, and acknowledged that he/she executed the same for the purposes therein.

    In witness whereof, I hereunto set my hand and official seal.

Notary Public _Erminia Dennis_

Printed Name _Erminia Dennis_

Title of Officer _Notary Public_

My Commission Expires: _10/17/21_

Commonwealth of Pennsylvania – Notary Seal
ERMINIA DENNIS – Notary Public
Montgomery County
My Commission Expires Oct 17, 2021
Commission Number 1038159

(Seal)



Certificate of Residence:

I/We do hereby certify that the precise address of the within named mortgagee, assignee or person entitled to interest is **1 Home Campus, Des Moines, IA 50328**.

**WELLS FARGO BANK, N.A.**

By: _____

Its: _____



ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**WELLS FARGO BANK, N.A.**

By: _____    _____

                              -Lender    Date of Lender Signature

### ACKNOWLEDGMENT

State of _____    §
                                   §
County of _____    §

       This instrument was acknowledged before me on _____
by
as                                of **WELLS FARGO BANK, N.A.**.

_____
Signature of Notarial Officer

_____
Printed Name

_____
Title or Rank

Serial Number, if any: _____

(Seal)                      My Commission Expires: _____



## EXHIBIT A

**BORROWER(S): ANDREW R. GROSS AND TINA MARIE GROSS**

**LOAN NUMBER: (scan barcode)**

**LEGAL DESCRIPTION:**

STATE OF PENNSYLVANIA, COUNTY OF MONTGOMERY, AND DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE IN ABINGTON TOWNSHIP; MONTGOMERY COUNTY, PENNSYLVANIA, BOUNDED AND DESCRIBED ACCORDING TO A FINAL PLAN OF SUBDIVISION OF PEACH TREE DRIVE MADE BY VIRGILIO G. MICCIULLA, REGISTERED SURVEYOR DATED 7/24/1975 AND RECORDED IN MONTGOMERY COUNTY IN PLAN BOOK A 25 PAGE 9 AS FOLLOWS, TO WIT;

BEGINNING AT A POINT ON THE SOUTHWESTERLY SIDE OF PEACH TREE DRIVE (50 FEET WIDE) SAID POINT IS MEASURED THE 6 FOLLOWING COURSES AND DISTANCES FROM A POINT OF CURVE ON THE SOUTHWESTERLY SIDE OF SHELMIRE STREET (1) LEAVING SHELMIRE STREET ON THE ARC OF A CIRCLE CURVING TO THE LEFT HAVING A RADIUS OF 10 FEET THE ARC DISTANCE OF 15,86 FEET TO A POINT OF TANGENT ON THE SOUTHEASTERLY SIDE OF PEACH TREE DRIVE (2) ALONG THE SAME SOUTH 39 DEGREES 19 MINUTES WEST 182.03 FEET TO A POINT OF CURVE (3) STILL ALONG THE SAME SOUTHWESTWARDLY ON THE ARC OF A CIRCLE CURVING TO THE LEFT HAVING A RADIUS OF 619.96 FEET THE ARC DISTANCE OF 55.58 FEET TO A POINT OF TANGENT (4) STILL ALONG THE SAME SOUTH 34 DEGREES 10 MINUTES 50 SECONDS WEST 170.76 FEET TO A POINT OF CURVE (5) STILL ALONG THE SAME SOUTHWESTWARDLY, WESTWARDLY AND NORTHWESTWARDLY ALONG THE SOUTHEASTERLY, SOUTHERLY AND SOUTHWESTERLY SIDES OF PEACH TREE DRIVE ON THE ARC OF A CIRCLE CURVING TO THE RIGHT HAVING A RADIUS OF 125.00 FEET THE ARC DISTANCE OF 207.11 FEET TO A POINT OF TANGENT ON THE SOUTHWESTERLY SIDE OF PEACH TREE DRIVE, AND (6) STILL ALONG THE SAME NORTH 50 DEGREES 53 MINUTES WEST 35.10 FEET TO THE POINT OF BEGINNING; THENCE EXTENDING FROM SAID BEGINNING POINT AND ALONG LOT NO. 3 AS SHOWN ON THE ABOVE MENTIONED PLAN SOUTH 39 DEGREES 07 MINUTES WEST 110.00 FEET TO A POINT; THENCE EXTENDING NORTH 50



DEGREES 53 MINUTES WEST 57.34 FEET TO A POINT A CORNER OF LOT NO. 5 AS SHOWN ON THE ABOVE MENTIONED PLAN, THENCE EXTENDING ALONG THE SAME NORTH 39 DEGREES 07 MINUTES EAST 110,00 FEET TO A POINT ON THE SOUTHWESTERLY SIDE OF PEACH TREE DRIVE THENCE EXTENDING ALONG THE SAME SOUTH 50 DEGREES 53 MINUTES EAST 57.34 FEET TO THE FIRST MENTIONED POINT AND PLACE OF BEGINNING.

BEING LOT NO. 4 AS SHOWN ON THE ABOVE MENTIONED PLAN AND CONTAINING 6306 SQUARE FEET.

BEING PARCEL NUMBER 30-00-52212-00-3

UPI/PIN/Tax ID: 30-00-52212-00-3

ALSO KNOWN AS: 325 PEACHTREE DR, JENKINTOWN, PA 19046



Date:               **May 13, 2021**
Loan Number:    **(scan barcode)**
Lender:          **WELLS FARGO BANK, N.A.**

Borrower(s):     **ANDREW R. GROSS AND TINA MARIE GROSS**
Property Address:  **325 PEACHTREE DR, JENKINTOWN, PA 19046**

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned herby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____   5/21/21      _____   5/21/21
**ANDREW R. GROSS**   (Borrower) (Date)    **TINA MARIE GROSS**   (Borrower) (Date)
                                                        **\*SIGNING SOLELY TO**
                                                         **ACKNOWLEDGE THIS**
                                                         **AGREEMENT, BUT NOT TO**
                                                         **INCUR ANY PERSONAL**
                                                         **LIABILITY FOR THE DEBT**

_____                                        _____
             (Borrower) (Date)                                  (Borrower) (Date)



Date:                        **May 13, 2021**
Loan Number:                 **(scan barcode)**
Lender:                      **WELLS FARGO BANK, N.A.**

Borrower(s):                 **ANDREW R. GROSS AND TINA MARIE GROSS**

Property Address:            **325 PEACHTREE DR, JENKINTOWN, PA 19046**

# ERRORS AND OMISSION COMPLIANCE AGREEMENT

In consideration of **WELLS FARGO BANK, N.A.**
(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____    5/21/21         _____    5/21/21
**ANDREW R. GROSS**        (Borrower) (Date)    **TINA MARIE GROSS**      (Borrower) (Date)
                                                ***SIGNING SOLELY TO**
                                                **ACKNOWLEDGE THIS**
                                                **AGREEMENT, BUT NOT TO**
                                                **INCUR ANY PERSONAL**
                                                **LIABILITY FOR THE DEBT**

_____                      _____
            (Borrower) (Date)                            (Borrower) (Date)

**Errors and Omission Compliance Agreements**
**Proprietary W3078F**
                                   Page 1 of 1                                    34961MU 06/16



**WELLS FARGO**

# Preferred Payment Plan℠ Enrollment Form
## Match your mortgage payments to your payday cycle

Managing your mortgage payments is easy when you enroll in the Preferred Payment Plan. Simply choose the option on the next page that matches your personal payday cycle, and your monthly payments will be withdrawn automatically from your checking or savings* account. The Preferred Payment Plan is free, secure, and more convenient than writing checks and mailing payments.

> *Please note: Enrolling in the Preferred Payment Plan does not change the principal and interest payment arrangement specified in your mortgage loan documents. Withdrawn funds may be applied to your mortgage when sufficient funds have accumulated to make a full monthly payment as outlined in your mortgage note.*

This plan is not required; it's one of many options you may choose from to make your mortgage payments.

## Preferred Payment Plan Terms and Conditions

You must agree to the terms and conditions below by completing and signing the form located on the following page:

- I understand that only a borrower on the loan can enroll in the Preferred Payment Plan. I am not a third party.
- I authorize Wells Fargo, its authorized representatives, and service providers to initiate electronic withdrawals from my designated account to make payments on my mortgage.
- I understand that I, or another borrower on the loan, must be the owner on the deposit account used for electronic withdrawals.
- I understand that a business account can only be used to set up electronic withdrawals for my mortgage loan if the business is on the Mortgage Note as a borrower.
- I understand that I will receive confirmation specifying the date the electronic withdrawals will begin. I understand that I will continue to make my payment until I receive this confirmation and electronic withdrawals begin.
- I understand that this authorization and the program services in no way alter or lessen my obligation under my existing mortgage contract regarding the amount of payments, when payments are due, the applications of payments, the assessment of late charges, or the determination of delinquencies. I must maintain sufficient funds in my account for withdrawal of my payment amount.
- I understand that withdrawn funds may not be applied to my mortgage until sufficient funds have accumulated for a full payment to be made.
- I understand that the electronic withdrawal amount will vary with changes in escrow or principal and interest components, if applicable.
- I agree to be bound by the program's Terms and Conditions, which are stated here and online.

## Preferred Payment Plan enrollment and change options

**Note:** We must receive notification at least 3 business days prior to any requests to temporarily stop, change or cancel participation in this program.

| | Can I do this by fax or mail? | Can I do this online? | Can I do this by phone? |
|---|---|---|---|
| Enrolling in automatic payments | Yes. | You can enroll online if you access your mortgage at **wellsfargo.com**. | Yes. |
| Temporarily stopping payments, canceling, or making other changes once I'm enrolled | Yes. | You can only cancel payments online. To temporarily stop payments or make other changes, call us. | Yes. |
| How can I do this? | Fill out and sign this form. Fax to 1-866-287-6249 Or mail to: Wells Fargo Home Mortgage PO Box 10335 Des Moines, Iowa 50306 | Sign on to your mortgage account at wellsfargo.com. Select the Transfer & Pay tab and choose Pay With Account. | Call us at 1-866-234-8271 |

**Fill out this form and return to us using the instructions on page one, and keep a copy of this form with your records.**

Exhibit A - Loan Modification   Page 20 of 20

## 1. Select the *Preferred Payment Plan* option that matches your pay schedule

Check the appropriate box to mark your choice. If this form is signed, but no option is checked, you will be set up for monthly withdrawals on your due date.

If you choose the weekly or bi-weekly option, withdrawals in addition to the amount needed to cover your monthly mortgage payments will naturally occur 2 to 5 times per year. The additional withdrawn funds will be automatically applied to your principal balance — helping you pay off your mortgage faster. For all options below, the monthly payment includes principal, interest, tax, insurance, and escrow payments, if applicable.

☐ **Weekly:** One-quarter of your monthly payment amount will be withdrawn every week.

*Request a withdrawal start date (must be Mon.-Fri. and 4 weeks prior to due date):* _____/_____/_____

☐ **Bi-weekly (every other week):** Half of your monthly payment amount will be withdrawn every other week. In a year's time, 26 withdrawals will be made.

*Request a withdrawal start date (must be Mon.-Fri. and 3 weeks prior to due date):* _____/_____/_____

☐ **Semi-monthly (twice a month):** Each withdrawal will equal one-half of the total monthly payment due. The full payment must be withdrawn before the end of your grace period. Fill in the dates you would like for each half of your payment to be withdrawn. Half of your monthly payment will be withdrawn on the _____ of the month and the second half will be withdrawn on the_____. In a year's time, 24 withdrawals will be made.

☐ **Monthly:** Your monthly payment amount will be withdrawn on your due date, or you can delay your monthly payment up to 14 days after your due date. Mark below to select the number of days you would like to delay your payment.

☐ Due date      ☐ 1 day after      ☐ 2 days after      ☐ 3 days after      ☐ Other (up to 14 days) _____

## 2. Specify additional principal to be withdrawn (optional)

You can choose to add an additional amount to each electronic withdrawal to be applied to your outstanding loan principal.

☐ Yes, please add $_____ to each of my automatic electronic withdrawals.

## 3. Supply your account information — You must be an owner on the deposit account

You can withdraw from up to 4 different accounts.

| Account Type: Checking or Savings* | Bank routing number: (9-digit number at the bottom left of your check) | Bank account number: (To the right of the bank routing number on your check) | Name on bank account | Amount or % to be withdrawn: |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

☐ I/We certify that I/we am/are an owner on the above accounts, and I/we am/are a borrower on the loan number listed below.

## 4. Signature

By signing below, I agree to the Terms and Conditions on the preceding page and online at wellsfargo.com/preferredterms.

Customer(s) name (print):_____      Customer phone number: _____

Property address:_____      Customer loan number: _____

Customer signature:_____      Date signed: _____

Customer signature:_____      Date signed: _____

**Note:** A newly signed form is required if the Preferred Payment Plan is not set up within 120 days of signing and dating this form.

* Excess Activity Fees may apply if you exceed these federally-mandated transaction limits for savings accounts: Three withdrawals in a month by check, draft, point-of-sale purchase, check card, or other similar withdrawal payable to a third party. A total of six transfers and/or withdrawals in a month including: those listed above, pre-authorized or automatic transfers (including overdraft protection transfers and payment to third parties), and transfers made online or by telephone. For more information, please refer to your account agreement with your financial institution.



Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.
© 2019 Wells Fargo Bank, N.A. All Rights Reserved. NMLSR ID 399801